**SO ORDERED.**

**SIGNED this 11th day of June, 2014.**



_Dale L. Somers_
Dale L. Somers
United States Bankruptcy Judge

---

Designated for on-line use but not print publication
# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

In re:

**STUART AULD,**

           **DEBTOR.**

**CASE NO. 14-20424**
**CHAPTER 11**

### MEMORANDUM OPINION AND ORDER FOLLOWING TRIAL ON MOTION FOR DISMISSAL AND FOR RELIEF FROM STAY ORDERING ADDITIONAL BRIEFING ON DISMISSAL AND GRANTING RELIEF FROM STAY

On May 29, 2014, trial was held on the Motion to Dismiss and Motion for Order

Granting Relief from the Automatic Stay filed by Sun West Mortgage Company, Inc.

(Sun West); John W. Auld, Jr., as Trustee of the John William Auld, Sr. Revocable Trust

Agreement dated November 30, 2007 (Auld, Sr. Trust); Sheila D. Verduzco (Verduzco);

Summers Law Firm, LC (Summers Law Firm); Charles Hammond (Hammond); and

Charles Hammond Law Firm (Hammond Law Firm) (collectively Movants).[1]  Debtor

Stuart Auld opposes the motion.[2]  The Court has jurisdiction.[3]

At trial, Sun West appeared by Erlene Krigel and Paul K. Hentzen, of Krigel &

Krigel, P.C.  The Auld, Sr. Trust appeared by Robert Andrews, of Johnson, Ballweg &

Modrcin, L.C. Verduzco appeared by Erlene Krigel and Paul Hentzen.  The Summers

Law Firm appeared by Erlene Krigel, Paul Hentzen, and Kim Summers.  Hammond and

the Hammond Law Firm appeared by Charles Hammond.  The Debtor appeared *pro se*.

Following close of the evidence record, the Court heard the arguments of counsel

and of the Debtor, and then placed the motion under advisement, subject to receipt of two

additional exhibits.[4]  It is now ready to rule, and for the reasons stated below finds: (1)

---

[1] Doc. 24. The Movants' motion also seeks sanctions.  The Court will address that matter after ruling on the merits of the motion to dismiss and for stay relief.

[2] Docs. 36 and 40.

[3] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Amended Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. Motions for dismissal and relief from stay are core proceedings which this Court may hear and determine as provided in 28 U.S.C. § 157(b)(2)(A) and (G).  There is no objection to venue or jurisdiction over the parties.

[4] The Auld, Sr. Trust, in accord with the Court's request when leaving the record open, has provided the clerk with the original of Trust exh. 18.

Debtor was granted leave to file an additional exhibit which he described as being a memorandum order filed in Johnson County, Kansas District court, case number 11CV4594, in which a page numbered "12" contained an important finding about the 1995 Trust's interest in the Property.  Instead of providing the additional exhibit, Debtor filed 26 page affidavit with 37 pages of attachments. Doc. 84. One of the attachments is an unnumbered page from the Journal Entry filed on November 19, 2013, which is already in the record as Sun West exh. 1 and Trust exh. 5. That page bears a notation at the top stating "Case 2:13-cv-02031-JTM-DJW Document 7-1 Filed 1/23/13 Page 12 of 14." The Court will consider this page to be the additional exhibit which Debtor was granted leave to file, but shall disregard the remainder of document 84, since the record was closed, subject to only the submission of two exhibits, one by Debtor and one by the

2

this case was not filed in good faith, but an order of dismissal will not be entered until after consideration of briefs on the question of whether dismissal should be with or without prejudice; (2) if the case were not dismissed, the Court would lack jurisdiction to rule on Debtor's claim of right to possession of the property where he resides and conducts his business; and (3) Movants are entitled to relief from stay to pursue state court litigation involving the Debtor.

**FINDINGS OF FACT.**

### A.  THE CHAPTER 11 CASE.

Debtor filed a voluntary petition under Chapter 11 *pro se* on March 6, 2014. Debtor's Statement of Financial Affairs (SOFA) and schedules were filed on March 21, 2014.[5]  The SOFA reports income from employment or operation of business of $9,000 in 2014 and $65,000 in 2013, and "unknown" in 2012.  The nature of Debtor's business, conducted from 1985 to the present, is stated to be "Real Estate Sole Proprietor; NV Corp.", operated under the name "Stuart Auld Corporate Real Estate Services."  The business address is 9135 Manor Road, Leawood, KS. (Property), where Debtor resides. Debtor's Monthly Operating Report for the month of March[6] reports total income of $4,431.82 and total expenses of $2,468.69 (excluding taxes and retirement).  The expenses appear to be personal, such as food and utilities; none appear to be uniquely

_____

Auld, Sr. Trust.

[5] Doc. 19; Auld Trust exh. 16 (schedules only).

[6] Doc. 41.

business related.

Schedule A, real property, has three entries.[7]  First it describes Debtor's interest in the Property as "Tenant in Common; Life Estate; Mortgage and Note lien; uncompensated ownership interest due to fraud upon the court and unlawful orders."  The value is stated to be "Unknown," and the amount of secured claim is stated as follows: "Debtor lien superior in time; Sun West lien disputed."  Schedule A also lists lots in Kansas City, Missouri valued at $3,500 held by Debtor's Roth IRA.  The third entry is Debtor's former marital residence, in which he states his interest to be an "Inherited Mortgage and Note Lien; uncompensated ownership interest due to fraud upon the court and unlawful order."

Schedule B, personal property,[8] states the current value is $15,186.  This value includes $500 cash and an e-trade account valued at $1,586.  Schedule C claims exemptions under Kansas law, but no values are stated. Schedule D lists three creditors holding secured claims. The first is GSA Federal Credit Union holding a $33,000 claim secured by a purchase money lien in a vehicle having value of $5,500 less than the claim. The second is stated to be "Assigned Note; Original Noteholder Stuart Auld," secured by the Property, in the amount of $425,000, with $225,000 unsecured.  As stated in the schedule and confirmed at trial, this is a note which was *held* by the Debtor on the date of filing, not a note *owed* by the Debtor.  It should not have been listed as a secured claim.

---

[7] Trust exh. 16, 1.

[8] *Id.*, 2.

4

The third secured creditor listed is Sun West, which is said to be the holder of "Invalid and Void Mortgage" on the Property securing a $200,000 claim. At trial Debtor acknowledged that he did not sign the note secured by the Sun West mortgage, did not sign the mortgage held by Sun West, and agreed that he has no liability to Sun West. GSA Federal Credit Union is therefore the only secured creditor. Schedule E states there are no unsecured priority claims. There are three unsecured nonpriority claims listed on Schedule F; all three claims are for legal fees and total $5,471, not substantially more than Debtor's cash on hand when he filed for relief. No executory contracts or unexpired leases are listed on Schedule G.

The SOFA lists three suits in which Debtor was a party within the year immediately preceding filing. The first of these suits, pending in Johnson County, Kansas District Court, is the consolidation of two cases, 11CV4594, an action in which Sun West seeks to foreclose its mortgage on the Property, and 11LA6470, an action in which the Auld Sr. Trust seeks to evict Debtor from the Property. These two cases, consolidated under case number 11CV4594, are hereafter referred to as the Property Litigation. Before the bankruptcy was filed, the state court granted both Sun West's and the trust's motions for summary judgment. As examined below, the trial in this Court focused upon Debtor's interest in the Property and the Property Litigation. The second suit listed on the SOFA is a suit filed by Debtor after the adverse rulings in the Property Litigation.[9] Defedants are

---

[9] Trust exh. 19.

5

the parties to the Property Litigation, their counsel, and the trial judge. The third suit is a claim by Debtor against an insurance company, but that action is not relevant to the matters before the Court.

## B. THE MOTION TO DISMISS AND FOR RELIEF FROM STAY.

The Movants' motion to dismiss is for cause under § 1112(b)(1). Although they argue that some of the statutory factors which constitute cause are present, their strongest argument is that this Chapter 11 case was not filed in good faith, since Debtor has no business to reorganize and filed this case to thwart his eviction from the Property, as ordered in the Property Litigation.

The Movants also move for relief from stay under § 362(d)(1) and (d)(2) so they can continue with the Property Litigation foreclosing Sun West's mortgage on the Property and eviction of Debtor from the Property and fully defend Debtor's action against them. They also argue the *Rooker-Feldman* doctrine precludes this Court from reconsidering the rulings of the Johnson County, Kansas District Court in the Property Litigation regarding Debtor's interest. They then argue that their interest in the Property is not adequately protected, that the Debtor has no equity in the Property, and that the Property is not necessary for an effective reorganization.

Debtor opposes both motions. He contends that he has a right to reorganize his real estate business and that reorganization is dependent upon conducting the business from the Property. Highly summarized, it is Debtor's position that the adverse rulings in the Property Litigation do not foreclose his position that he has an interest in the Property

6

sufficient to maintain possession because the Movants committed fraud on the Johnson

County, Kansas District Court and that such fraud deprives them of standing to pursue the

motions and makes the *Rooker Feldman* doctrine inapplicable.

### C. THE EVIDENCE.

### 1. The Property Title.[10]

Debtor's parents acquired the Property in 1957, and Debtor has lived in the

Property on and off since his childhood.  It currently has a value of approximately

$300,000.  He last moved back to the Property in April 2005 and currently occupies the

"mother in law" apartment in the basement level.  Debtor operates his real estate

consulting business from the Property.  He keeps his records there, but there is no

evidence that clients ever visit the premises.

In November, 1986 John W. Auld, Sr., Debtor's father, signed a promissory note

promising to pay Debtor $10,000 (1986 Note).[11]  It provided for periodic payments with

the balance due on November 1, 1989.  The interest rates was 15% per year. The 1986

Note recites that it is secured by a mortgage on the Property inferior to a mortgage then

held by a bank, but the mortgage allegedly securing the 1986 Note was not signed by

either Debtor's father or his wife, Nancy Auld, and was not recorded.[12]  On March 17,

---

[10] Except as otherwise noted, these findings of fact are supported by testimony and Trust Exh. 14, 2-7 and documents attached thereto.

[11] Exh. M, 1.

[12] Exh. M, 2-4.

7

2011, a "Notice of Lis Pendens and Lien due to Note & Mortgage" was filed by Debtor with the Johnson County Register of Deeds, to which a copy of the 1986 Note was attached.[13]

John Auld, Sr. and Nancy Auld were divorced in 1987. The decree of divorce, entered in Johnson County, Kansas District Court case number 87C1481, awarded the Property to Nancy Auld and included a provision that John Auld, Sr. "shall be responsible for any debt incurred to the parties' son, Stuart Auld."[14]

Debtor's exhibits include a document entitled "Agreement of the Auld Living Trust" of Nancy Auld executed on April 27, 1995 (1995 Trust).[15] The assets transferred to the 1995 Trust, as listed on schedule A to the document, include "all my interest in any real estate no matter how titled, including any cemetery plots."[16] Debtor testified that at the time the 1995 Trust was executed, Nancy Auld believed that she was dying and that she made very clear to Debtor that as long as the family owned the Property, Debtor could live in the basement. Debtor contends that this constituted the granting of a life estate which remains valid. Debtor asserted in the Property Litigation that the 1995 Trust is the holder of legal title to the Property. On November 30, 2000, Nancy Auld signed an affidavit stating the 1995 Trust was forged, and she completely disavowed and/or revoked

---

[13] Exh. N.

[14] Trust exh. 14, bate stamp AUL 0096.

[15] Exh. G.

[16] *Id.*, 8.

8

the 1995 Trust.[17]  Debtor testified that, although the signature on the document appears to be that of his mother, in his opinion the affidavit bears a false notarization and that his mother would not have executed such an affidavit because it contradicts her wishes as stated in a prenuptial agreement executed when she remarried John Auld, Sr. in 2005.[18]

On August 8, 1997, the "Nancy Nichols Auld Revocable Trust Agreement" was established by Nancy Auld (1997 Trust).  On the same date, Nancy Auld executed a Kansas Warranty Deed conveying the Property from herself to herself as trustee of the 1997 Trust.  The deed was properly recorded.  On January 29, 2005, Nancy Auld, as Trustee of the 1997 Trust, conveyed the Property to Nancy Auld.  The deed was properly recorded.  In 2005, John Auld and Nancy Auld were remarried,[19] and on April 18, 2005, John Auld and Nancy Auld executed a warranty deed conveying the Property to themselves as husband and wife "and the survivor of them, as joint tenants, and not as tenants in common."[20]  On May 11, 2005, Nancy Auld died.

On April 27, 2007, John Auld, Sr. signed a home equity note in favor of James B. Nutter & Company (Nutter) promising to pay all loan advances up to $306,375.00 (2007 Note).  On the same date, John Auld, Sr. executed a mortgage on the Property as

---

[17] Trust exh. 15, 3.

[18] The alleged prenuptial agreement was offered as Exhibit L, but was not admitted into evidence.

[19] Trust Exh. 14, 5.  This exhibit states that the remarriage was on February 1, 2005.  Debtor's exhibit L, which was not admitted into evidence, includes a copy of a marriage certificate dated April 15, 2005.  That exhibit also includes a copy of an "Agreement" purporting to be a premarital agreement between John Auld, Sr. and Nancy Auld, but the copy does not bear the signature of Nancy Auld.

[20] Exh. K.

9

collateral for the 2007 Note. The mortgage was properly recorded. In November 2007, the John William Auld, Sr. Revocable Trust under Agreement dated November 30, 2007 was established. (2007 Trust). On the same date, a deed was executed conveying the Property to the 2007 Trust, but on August 31, 2009, the trustee of the 2007 Trust executed a deed conveying the Property to John Auld, Sr. On August 31, 2009, John Auld, Sr. executed a Transfer-on-Death Deed transferring the Property on his death to the trustee of the 2007 Trust. John Auld, Sr. died on October 16, 2011.

On January 17, 2012, Nutter assigned the 2007 Note and Mortgage to Sun West. The assignment of the mortgage was recorded.

### 2. The Litigation Regarding Ownership and Occupancy of the Property.

In the spring of 2011, Debtor lived in the basement of the Property, which had a separate entrance, and Debtor's father, John Auld, Sr., lived in upstairs. On April 30, 2011, a Notice to Vacate Premises was posted at the entrance of the basement portion of the Property.[21] On May 27, 2011, Debtor filed a petition *pro se* in the District Court of Johnson County, Kansas, case number 11CV4594, against his father John Auld, Sr. and "unknown parties."[22] Debtor alleged that his father was a secured creditor by virtue of his father's execution of the 1986 Note, on which the amount of $415,441.20 in principal and interest was due, and his father's assumption of sole liability for the 1986 Note in the decree of divorce entered in case 87C1481. Further, Debtor alleged a judgment lien on

---

[21] Trust exh. 15, 6.

[22] Sun West exh. 15.

the Property resulting from his parent's 1987 divorce decree and that such lien was first in priority as to all other liens. Debtor's requested relief included a money judgment, an offer to accept a deed in lieu of foreclosure, and a prayer for a temporary restraining order to stay any eviction of Debtor from the Property.

On June 22, 2011, John Auld, Sr. filed a peaceable entry and forcible detainer action against Debtor, Johnson County, Kansas District Court case 11LA6470.[23] The plaintiff alleged that he owned the Property, that he granted the Debtor a tenancy at will in the Property, and although Debtor had been served with notice terminating the tenancy, Debtor refused to quit the premises. After John Auld died on October 16, 2011, the Auld Sr. Trust continued the litigation.

On October 21, 2011, the two Johnson County, Kansas District Court cases, 11LA6470 and 11CV4594, were consolidated, and the litigation proceeded as 11CV4594 (Property Litigation).[24] On February 27, 2012, Sun West was granted leave to intervene.[25] One day later, Sun West answered and asserted a counterclaim for declaratory relief and a third party petition for foreclosure, based upon its contention that it held a first lien on the Property.[26]

---

[23] Trust exh. 1.

[24] Trust exh. 3.

[25] *See* Sun West exh. 6, 12.

[26] *Id*.

On August 30, 2012, Sun West filed a motion for summary judgment.[27]  Debtor

responded *pro se*.  Oral argument was presented to the court.  The court granted Sun

West's motion by Journal Entry filed on November 19, 2012.[28]  The court concluded that

based upon the documents, "the record owner of the property in question is now the

Trustee of John's 2007 trust,"[29] subject to Sun West's valid mortgage.[30]  As to Debtor's

claims related to the 1986 Note and mortgage, the court found that even if Debtor had a

valid note and mortgage on the Property, he was "not entitled to enforce them because the

statute of limitations has run on the claim."[31]  As to the claim that Nancy Auld's 1995

Trust is the title holder, the court found Debtor had not provided evidence sufficient to

defeat a motion for summary judgment.[32]  A journal entry denying reconsideration was

filed on December 10, 2013.[33]

On November 16, 2012, the Auld, Sr. Trust moved for summary judgment, seeking

an order evicting Debtor from the Property.  Debtor responded.  By Journal Entry filed on

January 4, 2013, the motion was granted, and the trust's request for "[a]n immediate

---

[27] Trust exh. 4.

[28] Sun West exh. 1.

[29] *Id*., 9.

[30] *Id*., 13.

[31] *Id*., 10.

[32] *Id*., 12.

[33] *See* Sun West exh. 6, 5.

eviction of Plaintiff" was granted.[34]  After reiterating its prior finding that the Auld, Sr.

Trust is the owner of the Property the court found:

> Although Plaintiff [Debtor] took up residence at the property,
> there has never been a written lease agreement for Plaintiff to
> occupy the property.  Further, proper notice has been given to
> Plaintiff to vacate the premises.  Plaintiff has failed to respond
> to the arguments contained in Defendant's memorandum in
> support of the motion for summary judgment, with any legal
> basis (given the above determined uncontroverted facts) to
> deny Defendant's request for eviction.
>     Plaintiff makes a one sentence assertion that the
> Defendant does not have standing to bring this action.
> However, the Plaintiff cites no legal authority to support this
> assertion. This assertion is rejected.
>     Other arguments asserted by Plaintiff in his legal
> argument section, appear to go to the issue of who is the
> current owner of the property.  However, as noted above, this
> Court has already resolved that issue in favor of the
> Defendants.[35]

On January 14, 2013, Debtor filed a motion to reconsider on multiple grounds.[36]

On January 16, 2013, Debtor removed the Property Litigation to the United States

District Court for the District of Kansas.  On motion of Sun West and the Auld, Sr. Trust,

the case was remanded, and attorney's fees and costs were assessed against the Debtor to

the maximum amount of $2,500.[37]  Debtor appealed to the United States Court of Appeals

---

[34] Trust exh. 7.

[35] *Id.*, 6-7.

[36] *See* Sun West exh. 6, 4.

[37] Sun West exh. 9.

13

for the Tenth Circuit. It affirmed on January 29, 2014.[38]

On February 12, 2014, the Johnson County, Kansas District Court in the Property Litigation entered an order for status conference to be held on March 7, 2014, and advised that if "any party will be seeking an order to evict or writ of assistance, a motion must be filed on or before February 28, 2014."[39] On February 28, 2014, the Auld, Sr. Trust filed a motion for writ of assistance to evict Debtor from the Property.[40]

On February 25, 2014, Debtor filed a 38 page motion for continuance, for time to acquire new legal counsel, to set aside recent and past orders, and other relief.[41] On the same date, he also filed a 42 page motion to vacate orders and to set aside or vacate judgment, and other relief.[42] The District Court reviewed the motions, found that they generally contained "the same ramblings that have been asserted in numerous pleadings," and denied the motions, thereby sparing the other parties the "unnecessary time and effort to respond."[43] "As a sanction for the continuous filing of spurious motions" by Debtor, the court ordered that it would not permit him to "file any further pleadings" in the case

---

[38] Sun West exh. 10.

[39] Sun West exh. 3.

[40] Trust exh. 11.

[41] *See* Sun West exh. 6, 2.

[42] *Id*.

[43] Sun West exh. 4, 3.

14

"unless they are first submitted to this Court in chambers for review and approval."[44]

On February 27, 2014, Debtor and Corporate Real Estate Services, Inc. filed a petition in Johnson County, Kansas District Court.[45] It was assigned case number 14CV1395 (hereafter Debtor's New Property Litigation). Defendants are Sun West, the Summers Law Firm, Verduzco, the Charles Hammond Law Firm, Hammond, and Thomas Sutherland, the Johnson County, Kansas District Court judge in the Property Litigation. As a part of his introductory allegations, Debtor states he "vehemently disputes the Defendant's title and ownership claims of the real property in question (the "Home") [referred to by this Court as the Property], which is the subject of this action."[46] The first five of the 13 claims are: (1) Temporary restraining order; lack of standing to foreclose; motion to compel discovery requests; breach of contract; (2) fraud in the concealment; (3) fraud in the inducement; (4) intentional infliction of emotional distress, and (5) quiet title; negligence; per se.[47]

On March 3, 2014, Debtor appealed the November 19, 2012 and January 4, 2014 journal entries, granting Sun West and the Auld, Sr. Trust summary judgment in the Property Litigation to the Kansas Court of Appeals. No bond was posted or stay issued.

Debtor filed this Chapter 11 bankruptcy voluntary case *pro se* on March 6, 2014.

---

[44] *Id.*

[45] Trust exh. 19.

[46] *Id.*, 6.

[47] *Id.*, 1.

15

**DISCUSSION.**

**A. The Motion to Dismiss.**

Dismissal of a Chapter 11 case is addressed by § 1112(b)(1).  It provides:

> (b)(1) Except as provided in paragraph (2) [prohibiting conversion or dismissal when there are unusual circumstances] and subsection (c) [prohibiting conversion to Chapter 7 as to certain debtors], on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

Subsection (b)(4) provides a nonexclusive list of circumstances constituting cause, such as gross mismanagement of the estate and failure to comply with an order of the court. "In addition to granting relief for one of the reasons enumerated in section 1112(b), the court may also dismiss a chapter 11 case for lack of good faith."[48]  "It is well established under the Bankruptcy Code, as it was under the Bankruptcy Act, that a Chapter 11 Petition must be filed in good faith, and if not, dismissal of the case is an appropriate remedy."[49]

Dismissal for cause and dismissal for lack of good faith are compared by a well recognized bankruptcy commentator as follows:

---

[48] 3 *Collier on Bankruptcy* ¶1112.07, 1112-48  (Alan N. Resnick & Henry J.Sommer eds.-in-chief, 16th ed. rev. 2010).  *See In re Winslow*, 123 B.R. 641, 643 (D. Colo. 191) aff'd 949 F.2d 401 (10th Cir. 1991) ("In addition to the grounds listed in § 1112, a number of courts have permitted conversion when the debtor's petition has not been filed in good faith").

[49] *Pacific Rim Inv., LLP v. Oriam (In re Pacific Rim Inv., LLP)*, 243 B.R. 768, 771 (D. Colo. 2000) (*citing Udall v. FDIC (In re Nursery Land Dev., Inc.)*, 91 F.3d 1414, 1416 (10th Cir. 1996) (affirming sanctions for bad faith filing of Chapter 11 case)).

16

In general, a court may dismiss any case for lack of good faith in order to prevent abuse of the chapter 11 process or in response to misconduct that is incompatible with the functioning of the bankruptcy system. . . .

In general terms, the cause requirement of section 1112(b) applies at various stages in the case to test whether the benefits of reorganization are likely to be achieved within a reasonable amount of time and in a manner that is consistent with the requirements and restrictions of the Code. . . .

In contrast to testing the debtor's prospects of reorganization, the good faith standard focuses directly on the subjective intentions of the debtor and proper use of the bankruptcy system as a general system of equity and is designed to prevent "abuse of the bankruptcy process, or the rights of others, involv[ing] conduct or situations only peripherally related to the economic interplay between the debtor and the creditor community.[50]

When considering dismissal for lack of good faith, the matter "[a]t issue is whether the bankruptcy filing contravened the purposes of the Bankruptcy Code."[51] The United States Supreme Court has stated that the policies underlying Chapter 11 are preservation of going concerns and maximizing property available to satisfy creditors.[52] "The protection of the automatic stay is not *per se* a valid justification for a Chapter 11 filing; rather, it is a consequential benefit of an otherwise good faith filing."[53]

A good faith determination requires consideration of the totality of the

---

[50] 3 *Collier on Bankruptcy* ¶1112.07[1], 1112-48 and 1112-49.

[51] *Solow v. PPI Ente. (U.S.), Inc. (In re PPI Enter. (U.S.), Inc.)*, 324 F.3d 197, 210 (3rd Cir. 2003).

[52] *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999).

[53] *NMSBPCSLDHB, L.P. v. Integrated Telecon Express, Inc., (In re Integrated Telecom Express., Inc*, 384 F.3d 108, 128 (3d Cir. 2004) (quoting *In re HBA East, Inc.*, 87 B.R. 248, 262 (Bankr. E.D. N.Y. 1988)).

17

circumstances and must be based upon a fact-intensive, case-by-case inquiry.[54]  When a Chapter 11 Debtor's good faith is challenged by a motion to dismiss, the moving party must make a prima facie showing of the Debtor's lack of good faith.  The burden then shifts to the Debtor to show good faith.[55]

**1. This case is subject to dismissal because it was not filed in good faith.**

The Movants argue that bad faith filing is evidenced by Debtor's habit of frivolous court filings, Debtor's devotion to avoidance of his eviction from the Property, the timing of the filing of the bankruptcy petition, and the fact that Debtor has no business to reorganize and very little debt.  The record confirms the Movants' position, and Debtor has not proven good faith.

The evidence in this case convinces the Court that the Chapter 11 case was filed to obtain a stay of the Property Litigation and to set aside the rulings of the state court in the Property Litigation adverse to the Debtor's desire of continued occupation of the Property.  This is not a Chapter 11 case filed to preserve the value of Debtor's business or to maximize the value for creditors.

Debtor's motivation is convincingly evidenced by the circumstances surrounding the filing of this case.  As the findings of fact state in great detail, since 2011 Debtor, appearing primarily *pro se,* has engaged in fruitless litigation to establish his right to

---

[54]  *In re PPI Enter. (U.S.), Inc.*, 324 F.3d at 210-211.

[55]  *In re Muskogee Envtl Conservation Co.*, 236 B.R. 57, 59 (Bankr. N.D. Okl. 1999); *In re Fox*, 232 B.R. 229, 233 (Bankr. D. Kan. 1999).

18

remain in possession of the Property. The District Court of Johnson County, Kansas rejected Debtor's claims of right of ownership and possession under a note and unrecorded mortgage from his father and an unrecorded deed and oral wish of his mother. Debtor responded by removing the Property Litigation to the United States District Court, by appealing the remand order to the United States Circuit Court of Appeals, by filing voluminous pleadings restating his rejected positions, by appealing the journal entries granting summary judgment in the Property Litigation to the Kansas Court of Appeals more than a year after their entry, by filing suit in state court against the trial judge and the parties to the Property Litigation and their counsel, and then by filing for bankruptcy relief. He was sanctioned by the federal court and by the state trial court. Debtor's bankruptcy filing was made the day before a status conference at which the state court was to consider a motion for writ of assistance to remove Debtor from the Property. As stated above, filing to obtain the benefit of the § 362 stay is not *per se* justification for a Chapter 11 filing.

Debtor's financial circumstances evidence that this filing is outside the purposes of Chapter 11. Debtor's schedules and SOFA reveal that he has no business or affairs to reorganize. Debtor's business is real estate consulting. He has no employees. Debtor is solvent. His only secured debt is a vehicle loan, which he is continuing to pay. His only unsecured debts are for attorneys fees and sanctions incurred in the state court litigation. The one monthly operating report which he had filed as of the date of trial, shows personal expenses, not business expenses and that his business is operating profitably.

19

That report, together with Debtor's Schedule B, indicate that he has sufficient assets to pay the unsecured claims in full.

Debtor's voluminous pleadings filed in this Court opposing dismissal and relief from stay focus on his belief that the adverse rulings made in the Property Litigation were the result of fraud and should be set aside.[56]  For example, in response to the Movants' arguments that Debtor's schedules are contrary to the state court rulings, Debtor responds: "This is clearly understandable as the findings are false and based upon concealment of evidence, false facts, improper application of laws, negligent will full blindness of evidence and case law in the record and fraud upon the Court. . . .  The judgment is also clearly VOID as it violates KS trust laws, real estate laws, laws on substitution of parties, laws on standing and the like."[57]  Later he states, "Debtor/Trustee denies he has no equity in the subject property. . . . Clearly, he has testified under oath he was given a life estate by his mother."[58]  In this case, Debtor has attempted to serve subpoenas for Rule 2004 examinations of the parties to the Property Litigation and counsel, who are also defendants in Debtor's New Property Litigation.[59]  In his view, these are appropriate because of multiple frauds upon the state court and the concealment

---

[56] See docs. 36, 40, 77, 78, and 79.

[57] Doc. 36, 6-7.

[58] *Id*., 11.

[59] See docs. 17 and 18.

20

of evidence.[60]  In his pleadings, Debtor alleges that the Movants have no legal standing to file the motion to dismiss, despite the state court judgments concerning their rights in the Property, because "[i]t has yet to be decided by this Court if their claims are secured, unsecured, VOID or INVALID or not, as the parties have not gone through the proof of claim process nor any adversary proceedings."[61]  Seeking reversal of state court rulings is not a valid purpose of a Chapter 11 filing.  In fact, as examined below, this Court lacks subject matter jurisdiction to review those findings.

Debtor has not proven his good faith.  He testified that this litigation stems from the divorce of his parents and is a battle to achieve his mother's desire that Debtor remain in the Property as long as it is in the family.  When asked what he is trying to achieve in the bankruptcy, Debtor was evasive.  When asked what would be reorganized, he responded his business, although he acknowledged that it was not in deep financial trouble.  According to Debtor, it is necessary that he operate his business from the Property - he has always done so, and his records are there.  However, there is no evidence that clients come to the premises or that there is any advertisement or public information locating the business at the Property.  Debtor identifies no characteristics of the Property which make it uniquely suited for or essential for his business.

**2. This case is not subject to dismissal for cause.**

Movants also urge that the case should be dismissed for cause under § 1112(b)(4),

---

[60]  Doc. 36, 14-15.

[61] Doc. 78, 1.

subsections (A), (F), (J), (K), and (M). These subsections define cause as follows:

> (B)(4) For purposes of this subsection, the term 'cause' includes –
> (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
> (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
> (J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;
> (K) failure to pay any fees or charges required under chapter 123 of title 28;
> (M) inability to effectuate substantial consummation of a confirmed plan.

The record lacks evidence to find cause for dismissal under these subsections.

Cause under § 1112(b)(4)(A) requires two elements. Although as stated above, there is an absence of a reasonable likelihood of rehabilitation, since there is nothing to rehabilitate, but there is no evidence of substantial or continuing loss or diminution of the estate. The alleged violations of § 1112(b)(4)(F), such as failure to timely file operating reports, are not sufficiently material to be grounds for dismissal at this early stage of the Chapter 11 proceedings. Debtor is not delinquent in the filing of his disclosure statement or plan, so § 1112(b)(4)(J) does not apply. As to § 1112(b)(4)(K), Debtor moved for and was granted leave to pay his filing fee in installments, and his payments are not materially delinquent. Section 1112(b)(4)(M) does not apply since there is no confirmed plan to consummate.

**3. Before dismissing this case for lack of good faith filing, the Court requests**

22

**additional briefing on Movants' request that the case be dismissed with prejudice.**

At trial, the Movants requested that if the case is dismissed that the dismissal be with prejudice to the refiling of a case within 180 days. This request was not briefed in Movants' pretrial filings. The Court's own research has not located controlling authorities supporting such an order under the circumstances of this case.

Rather than dismiss the case without prejudice at this time, the Court will defer ruling on whether the dismissal is with or without prejudice until after completion of briefing of the issue in accord with the briefing schedule stated at the end of this memorandum.

**4. If the case is not dismissed, the Court would lack subject matter jurisdiction to consider Debtor's claim of right to possession of the Property.**

Under the *Rooker-Feldman* doctrine, this Court lacks subject matter jurisdiction to accomplish what Debtor desires. That doctrine precludes this Court from entertaining "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] court proceedings commenced and inviting [federal] court review and rejection of those judgments."[62] As stated by the Tenth Circuit Court of Appeals:

> The *Rooker–Feldman* doctrine establishes, as a matter of subject-matter jurisdiction, that only the United States Supreme Court has appellate authority to review a state-court decision. See 28 U.S.C. § 1257(a) (establishing Supreme Court jurisdiction to review certain "[f]inal judgments or

---

[62] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

23

> decrees rendered by the highest court of a State in which a
> decision could be had"). Thus, in applying the
> *Rooker–Feldman* doctrine, we focus on whether the lower
> federal court, if it adjudicated plaintiff's claims, would
> effectively act as an appellate court reviewing the state court
> disposition. [63]

The doctrine does not distinguish between "temporary" and "final" orders.[64] Pursuant to Supreme Court precedent, the Tenth Circuit applies to the doctrine "(1) to those federal claims actually decided by a state court, and (2) to those federal claims inextricable intertwined with a state court judgment."[65]

Debtor's contention that this Court should find the state court orders concerning interests in the Property erroneous, permeated with fraud, and void clearly falls within the scope of the *Rooker-Feldman* doctrine. Debtor is asking this Court to rule contrary to the state court - to find that Debtor is entitled to possession of the Property, when the state court ruled that Debtor has no right of possession and the Auld, Sr. Trust is entitled to an order of eviction. In bankruptcy, property rights are determined by state law. The Johnson County, Kansas District Court has determined that Debtor has no right to possession of the Property. This Court cannot review the propriety of that ruling.

To avoid the *Rooker-Feldman* doctrine, Debtor configures his claim for reversal of the Property Litigation rulings as one for fraud. Debtor argues:

---

[63] *Merrill Lynch Bus. Fin. Serv., Inc. v. Nudell*, 363 F.3d 1072, 1074 -1075 (10th Cir. 2004).

[64] *Id*. at 1075.

[65] *Id*.

> This case clearly calls in to question the many reasons at law
> or in equity that decrees of foreclosure and/or eviction are
> VOID and were fraudulently obtained. The parties had no
> standing and can form no basis for a claim in this Court.
> Again, so this Court is aware, there was no Jury trial as
> demanded in the Sutherland Court [the Johnson County,
> Kansas District Court]. There was no testimony or any
> authentication of evidence or presentation of any evidence at
> the Motion for Summary Judgment hearing. Discovery was
> incomplete and evidence concealed. The Debtor/Trustee's
> attorney was new to the case and wanted time for more
> discover. Mr. Hammond [attorney for the Auld, Sr. Trust]
> filed no responsive pleading on behalf of the
> children/beneficiaries (deliberately throwing them under the
> bus).[66]

In so doing, Debtor hopes to come within the ruling in *Johnson*,[67] where the Tenth Circuit

ruled that *Rooker-Feldman* did not apply when the plaintiff "lacked a reasonable

opportunity to litigate claims in the state court."[68] In *Johnson*, the plaintiff, the purported

father of a child whose adoption had been obtained in Utah state court, brought suit

against the biological mother, the adoption center, and the adoptive parents, seeking a

declaration that Utah's adoption statutes unconstitutionally denied him notice and an

opportunity to be heard, and alleging intentional infliction of emotional distress. The

Tenth Circuit reversed the district court's dismissal for lack of subject matter jurisdiction.

It held that *Rooker-Feldman* did not apply for two reasons. First, the plaintiff was not a

party to the Utah adoption proceedings, and *Rooker-Feldman* does not apply to non-

---

[66] Doc. 78, 16.

[67] *Johnson v. Rodrigues (Orozco)*, 226 F.3d 1103 (10th Cir. 2000).

[68] *Id.* at 1110.

parties. Second, on appeal plaintiff's discrete challenge to the validity of the Utah adoption laws would be considered. This distinguished the case from one challenging the merits of the particular state ruling.[69] *Johnson* does not apply here. Debtor was a party to the Property Litigation and availed himself of his full and fair opportunity to oppose the summary judgment motions. The arguments which Debtor raises concern the merits and are issues which would be argued on a timely appeal from the state court rulings. If the Court were to consider the arguments, it would effectively be acting as an appellate court.

### B. The Motion for Relief from Stay.

Movants seek relief from stay to continue the Property Litigation against Debtor, including Sun West's foreclosure of its mortgage on the Property and the Ault, Sr. Trust's eviction of Debtor from the Property. They also seek relief from stay as to Debtor's New Property Litigation recently filed against the Movants. They rely upon § 362(d)(1) and (d)(2). The Debtor opposes the motion for stay relief.

Section 362(d)(1) and (d)(2) provide:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
> (A) the debtor does not have an equity in such property; and

---

[69] *Id.* at 1108.

(B) such property is not necessary to an effective reorganization;

The Code does not define "party in interest" for purposes of § 362(d). But § 1109(b) by providing that the term includes the debtor, the trustee, a creditor, an equity security holder, and official committees, suggests that the term is broadly construed. In the context of a motion for relief from stay, a person or entity affected by the stay has an interest in the stay and should be entitled to seek relief from stay.[70] In this case, the Movants are all affected by the stay because they are parties to the Property Litigation and the Debtor's New Property Litigation. The Court rejects the Debtors' arguments that the Movants lack standing to seek relief from stay.

Section 362(d)(1) does not define cause for relief from stay, other than to provide that it includes lack of adequate protection. "Because there is no clear definition of what constitutes 'cause,' discretionary relief from the stay must be determined on a case by case basis."[71] An example of cause is "to permit litigation to be concluded in another

---

[70] *Vieland v. First Fed. Savings Bank (In re Vieland)*, 41 B.R. 134, 138 (Bankr. N.D. Ohio 1984) (concluding that "'a party in interest' under section 362(d) must be determined on a case by case basis with reference to the interest asserted and how said interest is affected by the automatic stay"); *Evans v. The Bank of N.Y. (In re Evans)*, 2013 WL 1283853 *3 (D. Colo. 2013)(quoting *Vieland*). 2 *Collier on Bankruptcy* ¶362.07[2], 362-106 (". . the better approach is to recognize that any party affected by the stay should be entitled to move for relief." Movants Sun West and the Auld, Sr. Trust also have standing as creditors of the Debtor, since they have claims against the Property, and claims against the Debtor include claims against property of the Debtor. 11 U.S.C. § 102(2).

[71] *Pursifull v. Eakin*, 814 F.2d 1501, 1506 (10th Cir. 1987).

27

forum."[72]  Twelve factors were identified in *Curtis*[73] "as some of the issues a bankruptcy court might consider when determining whether to lift the stay to permit pending litigation in another forum."[74]  They have been widely adopted by bankruptcy courts.[75]  In addition, bad faith filing has been recognized as cause for relief from stay.[76]

The stay of § 362(a)(1) clearly applies to Johnson County, Kansas, case number 11CV4954.  Of the twelve *Curtis* factors, the following are relevant to lifting the stay to allow the continuation of that litigation:[77]  whether the relief would result in a partial or complete resolution of issues; whether the litigation in another forum would prejudice the interests of other interested parties; the interest of judicial economy and the expeditious and economical determination of litigation; the impact of the stay on the parties and the balance of hurt; and the stage of the foreign proceedings.  These factors strongly support relief from stay.  The conclusion of the Property Litigation would result in a complete resolution of Debtor's claim of right to occupancy of the Property.  Continuation of the Property Litigation in the Kansas courts would not prejudice the interests of other

---

[72] 2 *Collier on Bankruptcy* ¶362.07[3][a], 362-107.

[73] *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984).

[74] *Busch v. Busch (In re Busch)*, 294 B.R. 137, 141 (10th Cir. BAP 2003).

[75] *Id.*

[76] E.g., *Laguna Assoc. Ltd P'ship v. Aetna Casualty & Surety Co. (In re Laguna Assoc. Ltd. P'ship)*, 30 F.3d 734, 737-738 (6th Cir. 1994).

[77] The Court has previously granted relief from stay with respect to the appeal filed by Debtor from the summary judgment orders entered in Johnson County, Kansas case number 11CV4594. Doc. 46.

28

interested parties.  The interest of judicial economy would be well served.  The Property

Litigation is close to conclusion.  Motions for summary judgment have been granted.

Only post judgment matters are not resolved.  Re-litigation of Debtor's interest in the

Property in this Court would be outrageously inefficient.  In addition, the Court has found

that this case was filed in bad faith.  The stay should be lifted for cause under § 362(d)(1)

as to the Property Litigation.

The stay should be also lifted as to the litigation involving Debtor's possession of

the Property under § 362(d)(2).  With respect to acts against property, that subsection

allows lifting of the stay when (1) the debtor does not have equity in such property and

(2) such property is not necessary to an effective reorganization.  Both conditions are

present here.

The Movants have proven, through the title documents and the journal entries in

the Property Litigation, that Debtor has no equity in the Property.  The Kansas court ruled

that the Ault, Sr. Trust is the owner of the Property, that Debtor has no right of

possession, and that Debtor holds no lien in the Property by virtue of the 1987 note and

unrecorded mortgage.

Debtor has not shown that the Property is necessary to an effective reorganization.

As to this element, the United States Supreme Court has stated:

> Once the movant under § 362(d)(2) establishes that [the
> Debtor has no equity in the property], it is the burden of the
> *debtor* to establish that the collateral at issue is "necessary to
> an effective reorganization."  What this requires is not merely
> a showing that if there is conceivably to be an effective

> reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*. This means, as many lower courts, including the en banc court in this case, have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time." [78]

As stated previously, although Debtor conducts his business from the Property, there is no evidence that clients visit the premises or that the Property is uniquely suited to the conduct of the business. Also, for the reasons discussed above, the Court finds that there is no reasonable likelihood of an effective reorganization, since there is no business which needs to reorganize or could benefit from reorganization.

The extent to which the stay applies to Debtor's New Property Litigation, recently filed against the Movants and the judge who heard the Property Litigation, is less certain, since the Debtor is the plaintiff. Nevertheless, the Court finds that to the extent that the stay applies, it should be lifted. This recently filed case is directly related to the Property Litigation. Since there is cause to lift the stay as to that case, the stay should also be lifted as to the companion case. The Movant-defendants should not be hampered by the shadow of the stay when asserting their defenses and evaluating counter claims.

For the foregoing reasons, the Court finds that the stay should be lifted to permit the Movants to complete the Property Litigation and to fully defend the Debtor's New Property Litigation, including the filing of counter claims if deemed appropriate.

---

[78] *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 375-376 (1988) (citations omitted).

Bankruptcy Rule 4001(a)(3) provides that an order lifting the stay shall be "stayed until the expiration of 14 days after [its entry], unless the Court orders otherwise." The circumstances of this case convince the Court that immediate relief from stay is appropriate.

**CONCLUSION AND BRIEFING SCHEDULE.**

The Court finds that this Chapter 11 case was not filed in good faith and is therefore subject to dismissal. The Court further finds that this case is not subject to dismissal for cause. The Court finds that if the case is not dismissed, it would lack subject matter jurisdiction to provide the relief requested by Debtor. However, because the Movants have requested that the dismissal for bad faith filing be with prejudice to the filing of another case under Title 11 for 180 days and the Court is not certain it has the authority to do so, the case will not be dismissed at this time. Movants shall within **35 days** of the docket entry of this memorandum file a brief addressing the authority of the Court to dismiss this case with prejudice to the Debtor's filing of a new case under Title 11 within 180 days. Debtor may file a brief in response within **35 days** of the filing of the Movants' brief.

As found above, grounds to lift the automatic stay under § 362 (d)(1) and (d)(2) are present. The Court orders that relief from stay be granted as to Johnson County, Kansas District court case numbers 11CV4594 and 14CV1395 and that the order lifting the stay be effective upon filing of the judgment granting the relief.

The foregoing constitute Findings of Fact and Conclusions of Law under Rules

31

7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter.  A judgment granting relief from stay based upon this ruling will be entered on a separate document.

**IT IS SO ORDERED.**

**###**